[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 5, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-11643
Non-Argument Calendar

_____

Agency No. A097-918-948

DARLY NAPOLEON,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 5, 2009)

Before EDMONDSON, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Darly Napoleon, a Haitian citizen, petitions this Court *pro se* for review of the Board of Immigration Appeals' ("BIA") decision, affirming the immigration judge's ("IJ") order denying him asylum, withholding of removal under the Immigration and Nationality Act, and protection under the United Nations Convention on Torture ("CAT"). On appeal, Napoleon argues that the IJ's adverse credibility determination was erroneous. Specifically, Napoleon argues that his inconsistent answers before the IJ were the result of a language barrier, nervousness, and his attempt to recount a chaotic time from six years ago.

This Court can only review the BIA's decision, except to the extent that the BIA expressly adopts the IJ's opinion or reasoning. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). We review the IJ decision insofar as the BIA adopts the IJ's reasoning. *Id.* Because here, the BIA adopts the IJ's reasoning, this Court reviews the IJ's decision.

As an initial matter, although the BIA addressed the merits of Napoleon's CAT claim, he did not actually raise this claim in his appeal to the BIA. *See* Admin. R. at 7–10, 21. We lack jurisdiction to consider a claim that was not raised before the BIA, even if the BIA reviews the issue *sua sponte*. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam). As such, we lack jurisdiction to consider Napoleon's CAT claim.

2

An applicant may obtain asylum based on political opinion if he is unwilling or unable to return to his country "because [he] has suffered past persecution or because [he] has a well-founded fear of future persecution." 8 C.F.R. § 208.13(b); *see also* 8 U.S.C. § 1101(a)(42)(A). To qualify for withholding of removal, an applicant must establish "that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003) (citing 8 U.S.C. § 1231(b)(3)(A)). The applicant bears the burden of proof in establishing his eligibility for asylum and withholding of removal. *See* 8 C.F.R. § 208.13(a); 8 C.F.R. § 208.16(b). While the burdens of proof for asylum and withholding of removal are slightly different, if an applicant cannot establish that he has a well-founded fear of future persecution based on a protected ground if he were to be returned to his country, then he cannot qualify for either asylum or withholding of removal. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232–33 (11th Cir. 2005) (per curiam) (citing *Mazariegos v. Office of U.S. Att'y Gen.*, 241 F.3d 1320, 1324–25 n.2 (11th Cir. 2001)).

An applicant's testimony, if credible, may carry his burden of proof without corroboration. 8 C.F.R. § 208.13(a). "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005)

(citing *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004)). Once the IJ makes an explicit adverse credibility finding, the burden is on the applicant to show that the credibility decision was not supported by "specific, cogent reasons or was not based on substantial evidence." *Id.* (internal quotation omitted). "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006) (per curiam).

Factual findings, including credibility determinations, are reviewed under the substantial evidence test. *Chen v. U.S. Att'y. Gen.*, 463 F.3d 1228, 1230–31 (11th Cir. 2006) (per curiam). Under the substantial evidence test, we must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar*, 257 F.3d at 1284 (quotation and citation omitted). Therefore, to reverse a credibility determination, "we must find that the record not only supports reversal, but compels it." *Mendoza*, 327 F.3d at 1287 (citing *Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002)).

In reviewing an adverse credibility determination, we may not substitute our judgment for that of the IJ. *D-Muhumed*, 388 F.3d at 818 (citation omitted). The record evidence is viewed in the light most favorable to the agency's decision and

4

all reasonable inferences are drawn in favor of its decision. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). We may only reverse the agency's decision if there is no reasonable basis for that decision, and must not reweigh evidence from scratch. *Id.* at 1027, 1029.

Here, the BIA adopted and affirmed the IJ's adverse credibility finding. The IJ found inconsistencies between Napoleon's asylum application and his testimony and could not obtain clear explanations from Napoleon. Napoleon's claim centered around several incidents with pro-Lavalas chiméres. Fanmi Lavalas is a leftist political party in Haiti founded by former president Jean-Bertrand Aristide. "Chiméres," also known as "thugs," have been known to support the party through violent tactics.

In his first incident, Napoleon recounts in his asylum application that in May 2000, Lavalas chiméres grabbed him and beat him up. Admin. R. at 122. However, at the hearing, Napoleon testified multiple times that he was not harmed during this incident but was simply pushed around and pressured. On cross-examination, he stated that the chiméres "physically . . . did something to [him]." *Id.* at 103. When confronted with the contents of his application, he attempted to clarify that the chiméres "beat [him] up, they pushed [him] around but they did not

5

kill [him]." *Id.* at 105. The IJ found Napoleon's attempt to distinguish between "harmed" and "killed" illogical. *Id.* at 38.

Second, in his asylum application, Napoleon describes a November 2000 meeting in which the chiméres "beat up people" and split up the meeting. *Id.* at 122. However, at the hearing, Napoleon testified that he was beaten, but that no one else was hit. *Id.* at 76. The IJ did not get the same sense of violence from the testimony that was portrayed in the application. *Id.* at 38. Third, Napoleon could not respond clearly to the IJ's inquiry as to any problems he faced between November 2000 and December 2001. *Id.* at 78–80.

Fourth, Napoleon mixed up the dates of his departure to Saint-Marc and only gave the date mentioned in the asylum application after repeated questioning by the IJ. *Id.* at 84–87. Fifth, Napoleon confused events that occurred in one place with those that occurred in another. *Id.* at 87–95, 97–100. For instance, in describing a May 2002 incident he testified that the chiméres threatened to burn his cousin's house down. *Id.* at 88. However, his asylum application notes that the threat was made during a November 2002 encounter and was directed at his friend. *Id.* at 123. Sixth, Napoleon stated in his application that he attended a political meeting, but during his testimony he described the meeting as a mass demonstration in the streets. *Id.* at 92–93.

Napoleon argues that his accounts of persecution are inconsistent because he is not a native English speaker and because these events took place years ago. However, Napoleon's possible explanation for the inconsistencies is not enough to compel us to reverse the BIA's credibility finding. "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi*, 386 F.3d at 1027 (citation omitted). Moreover, Napoleon has provided no meaningful evidence to corroborate his claims of persecution. Therefore, the record does not compel a reversal of the BIA's adverse credibility finding, and we deny Napoleon's petition for review.

**PETITION DENIED.**